**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ILENE HARPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-1678 |
| | § | |
| FORT BEND INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Ilene Harper was the Assistant Director of At-Risk in the Fort Bend Independent School District. The At-Risk Department provided student support services like pregnancy education, positive behavior support, and summer school. In December 2014, Michael Ewing, the director of this department, and Dr. Lupita Garcia, the executive director, presented a proposal to the School District's Executive Leadership Team to restructure Ms. Harper's assistant director position into two coordinator positions. In early January 2015, Ms. Harper told Mr. Ewing that she might need to take leave under the Family and Medical Leave Act for foot surgery. In early February, Dr. Garcia and Mr. Ewing informed Ms. Harper that the School District had accepted the restructuring proposal to eliminate her position and replace it with a coordinator. The change was scheduled for the end of the fiscal year, June 30, 2015.

Ms. Harper was offered the coordinator position, which had a lower salary than her current position. Ms. Harper was told to inform the District by March 4, 2015 whether she would accept the coordinator position. She did not respond to that offer.

On March 5, Ms. Harper began her FMLA leave. She was on leave until June 9, 2015. During that period, the coordinator position that Ms. Harper was offered, but did not take, was posted on the School District's employment website. Ms. Harper did not apply. When she returned to work on June 9, she was informed that because her position was being eliminated, and she had not taken the coordinator position, her last day of work would be June 30, 2015.

Ms. Harper filed this suit alleging that the School District violated Texas law by discriminating against her because of her race and disability and retaliated against her for filing an internal grievance complaining of what she perceived as discriminatory practices. She also alleged that the School District violated the FMLA by interfering with her FMLA leave and retaliating against her for taking leave. She based her claims on the School District's decision to eliminate her position and refusing to transfer her to a new position. The court dismissed Harper's Chapter 21 retaliation claim because the decision to reorganize the department was made before any protected activity; allegations that, as a matter of law, could not show causation. (Docket Entry No. 15). The School District now moves for summary judgment on Ms. Harper's remaining claims. (Docket Entry No. 18).

Based on a careful review of the motion, response, reply, and surreply; the record; the relevant law; and the arguments of counsel, the court grants Fort Bend Independent School District's motion for summary judgment. (Docket Entry No. 18). The reasons for the rulings are set out below.

## I.    Background[1]

---

[1] The summary judgment evidence includes Ms. Harper's deposition and affidavit (Docket Entry No. 18, Exs. A, A-4; Docket Entry No. 19, Exs. A, B); Dr. Lupita Garcia's affidavit (Docket Entry No. 18, Ex. B); emails between Kermit Spears, a Fort Bend human resources employee, and Ms. Harper (*Id.*, Exs. A-1, D-1; Docket Entry No. 19, Ex. N); Ms. Harper's Texas Workforce Commission charge of discrimination and

Fort Bend Independent School District hired Ilene Harper in 2007 as its Assistant Director of Student Support Services and Cultural Diversity. (Docket Entry No. 19, Ex. A at ¶ 2). During the summer before the 2014 to 2015 school year, that department was reorganized and restructured, and Ms. Harper's position was moved to the Federal and Special Programs Department. (Docket Entry No. 18, Ex. B at ¶ 4). In the reorganization, Ms. Harper's position was retitled the Assistant Director of At-Risk. (*Id.* at ¶ 5). Dr. Lupita Garcia was the Executive Director of Federal and Special Programs, which included the At-Risk department. (*Id.* at ¶ 2). The School District hired Michael Ewing as the Director after Ms. Harper was named Assistant Director. (*Id.* at ¶ 5). Mr. Ewing was Ms. Harper's direct supervisor. Mr. Ewing, like Ms. Harper, is African-American. (*Id.*, Ex. A at 10; Ex. C at ¶ 2).

A second phase of the reorganization took place at the beginning of the 2014 to 2015 school year. Dr. Garcia and Mr. Ewing worked together to restructure and reorganize the At-Risk Department. (*Id.*, Ex. B at ¶¶ 4–6; Ex. C at ¶ 5). As part of the reorganization, Dr. Garcia, in consultation with Mr. Ewing, asked that Ms. Harper's position, Assistant Director of At-Risk, be converted into two coordinator positions. (*Id.*, Ex. B at ¶¶ 4–6; Ex. C at ¶ 5). It was too late to convert Ms. Harper's position for the school year, but one coordinator position was created. (*Id.*,

---

accompanying documents (Docket Entry No. 18, Exs. A-2, E-9; Docket Entry No. 19, Exs. E, F, L; Docket Entry No. 20, Ex. A); Ms. Harper's termination letter (Docket Entry No. 18, Ex. A-3;Docket Entry No. 19, Ex. D); internal organizational charts of Ms. Harper's department (Docket Entry No. 18, Ex. B-1;Docket Entry No. 19, Exs. G, K); Dr. Garcia's personal calendar entries (Docket Entry No. 18, Ex. B-2); the restructuring proposal (*Id.*, Ex. B-3); a memo from Dr. Garcia to Ms. Harper (*Id.*, Ex. B-4); Fort Bend's written policies (*Id.*, Exs. B-5, D-6, E-7, E-8); Mr. Ewing's affidavit (*Id.*, Ex. C); Mr. Spears's affidavit (*Id.*, Ex. D); the Coordinator job description, job posting, applications, and interview notes (*Id.*, Exs. D-2, D-3, D-4, D-5); Ms. Harper's internal grievance form (*Id.*, Ex. D-7); Ms. Harper's FMLA leave documents (*Id.*, Ex. D-8); Glenda Johnson's affidavit (*Id.*, Ex. E); documents showing Ms. Harper's asserted comparators job descriptions and salaries (*Id.*, Exs. E-1, E-2, E-3, E-4, E-5, E-6; Docket Entry No. 19, Exs. I, J; Docket Entry No. 24, Ex. A); photos of Ms. Harper's office (Docket Entry No. 19, Ex. C); excerpts of Fort Bend's interrogatories (*Id.*, Exs. H, M); and Ms. Harper's performance review from January 2015 (*Id.*, Ex. O).

Ex. B at ¶¶ 4–6; Ex. C at ¶ 5). At the beginning of the 2014 to 2015 school year, She'Nee Young, who is African-American, was hired to fill that position, with the title of Coordinator At-Risk. (*Id.*, Ex. B at ¶ 6; Ex. C at ¶ 5).

On December 10, 2014, Dr. Garcia, again in consultation with Mr. Ewing, presented staffing requests for the At-Risk Department to the School District's Executive Leadership Team. (*Id.*, Ex. B at ¶ 7; Ex. B-2; Ex. B-3; Ex. C at ¶ 7). Dr. Garcia formally requested that Ms. Harper's assistant director position be eliminated and replaced with another new coordinator position, to be called the Coordinator At-Risk Programs. (*Id.*, Ex. B at ¶¶ 7–9; Ex. C at ¶¶ 7–9).

On January 6, 2015, Ms. Harper told Mr. Ewing that she might have to take leave under the Family and Medical Leave Act for surgery to remove a bunion from her foot. (*Id.*, Ex. A at 15; Docket Entry No. 19, Ex. A at ¶ 8). In early February 2015,[2] Dr. Garcia and Mr. Ewing met with Ms. Harper to tell her that her assistant director position would be eliminated and replaced by an added coordinator position beginning the next school year. (Docket Entry No. 18, Ex. B at ¶ 8; Ex. C at ¶ 8; Docket Entry No. 19, Ex. B at 16). On February 27, 2015, Dr. Garcia and Mr. Ewing met with Ms. Harper again to discuss the restructuring. (Docket Entry No. 18, Ex. B at ¶ 9; Ex. C at ¶9; Docket Entry No. 19, Ex. B at 17). During this meeting, Dr. Garcia offered Ms. Harper the newly created coordinator position. (Docket Entry No. 18, Ex. B at ¶ 9). Dr. Garcia told Ms. Harper that her salary would remain the same for the rest of the school year. (*Id.*). When Ms. Harper asked about the salary for the coordinator position, Dr. Garcia responded that Ms. Harper's salary would be "adjusted in accordance with [the School District's] salary schedule" for the next year. (*Id.*). Ms.

---

[2] The parties dispute whether this meeting occurred on February 9 or February 19. (*Compare* Docket Entry No. 18, Ex. B at ¶ 8 *with* Docket Entry No. 19, Ex. B at 16). This factual dispute is not material.

Harper was told to inform Dr. Garcia or Mr. Ewing whether she wanted to accept the coordinator position by March 2, 2015. (*Id.*).

After that meeting, Dr. Garcia sent a memo to "recap the conversation" she had with Ms. Harper and Mr. Ewing about the restructuring. (*Id.*, Ex. B-4). In this memo, Dr. Garcia extended a formal written offer of the coordinator position, and stated that "[a]s an employee of [Fort Bend Independent School District] in good standing," Ms. Harper was "eligible to apply for any other positions that we may have available." (*Id.*).

On March 4, 2015, Ms. Harper met with the School District's Chief Human Resources Officer, Kermit Spears, to discuss the elimination of her assistant director position and the creation of the coordinator role. (*Id.*, Ex. D at ¶ 4; Ex. D-1). Mr. Spears told Ms. Harper that she would be paid $11,000 less in the coordinator position than she was in her assistant director position. (*Id.*, Ex. D at ¶ 4; Docket Entry No. 19, Ex. B at 38, 40). Mr. Spears reurged Dr. Garcia's offer of the coordinator position, and asked Ms. Harper to let him know by the end of that day whether she would accept the offer. (Docket Entry No. 18, Ex. D at ¶ 4). He also told Ms. Harper that if she did not accept the coordinator position, it would be posted on the School District's employment website for competitive applications. (*Id.*). Ms. Harper did not accept the position by the deadline. (*Id.*). The day of the meeting with Mr. Spears, March 4, was also Ms. Harper's last day of work before her foot surgery and the beginning of her FMLA leave. (*Id.*, Ex. D-8).

On March 26, 2015, Harper filed an internal grievance, complaining about the School District's racially discriminatory practices. She included the restructuring and the elimination of her assistant director position and offer of the coordinator position and the associated pay decrease. (*Id.*, Ex. D-7; Docket Entry No. 19, Ex. B at 42, 49).

The coordinator position was posted on the School District's employment website on May 4, 2015. (Docket Entry No. 18, Ex. D at ¶ 5). The application deadline was May 15. (*Id.*). Ms. Harper did not apply for the job. (*Id.*, Ex. D at ¶ 4). After interviewing three candidates, the School District hired DeAndria Brigham. (*Id.*, Ex. D at ¶ 5). Like Ms. Harper, Ms. Brigham is African-American. (*Id.*).

Ms. Harper returned to work on June 9, 2015. (Docket Entry No. 19, Ex. B at 57). She found a large number of boxes stored in her office. (*Id.* at 55–56; Ex. C). Ms. Harper did not resume her normal duties, which included assignments relating to summer-school work. (*Id.*, Ex. B at 55–56). Instead, she did clerical work. (*Id.*).

On June 9, Ms. Harper was given a letter stating that because her assistant director position was eliminated, and because she had not accepted the coordinator position, her last day of work would be June 30, 2015. (Docket Entry No. 18, Ex. A-3). The letter ended by stating: "Please note that you are eligible to apply for any position for which you are qualified." (*Id.*). At the end of the fiscal year, June 30, 2015, Ms. Harper was terminated. (*Id.*, Ex. A at 75).

Ms. Harper filed suit on May 25, 2016 in Texas state court. She asserted race and disability discrimination and retaliation claims under Chapter 21 of Texas law, and interference and retaliation claims under the Family and Medical Leave Act. (Docket Entry No. 1, Ex. 2). The School District timely removed, and moved to dismiss the Chapter 21 claims for a lack of subject-matter jurisdiction. (Docket Entry Nos. 1, 5). The court dismissed Ms. Harper's Chapter 21 retaliation claim because the School District's December 2014 decision to reorganize the At-Risk Department and eliminate the assistant director position was made before she made any complaint. (Docket Entry No. 15). The court denied the motion to dismiss the Chapter 21 discrimination claims. (*Id.*).

The School District now moves for summary judgment on Ms. Harper's Chapter 21 and FMLA claims. (Docket Entry No. 18). Ms. Harper responded, the School District replied, and Ms. Harper filed a surreply. (Docket Entry Nos. 19, 20, 24). The court heard argument on the motions. (Docket Entry No. 25). The parties' arguments and the record evidence are analyzed under the applicable legal standards.

## II.    The Legal Standards

### A.    Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not

need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *E.E.O.C.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

### B.     Employment Discrimination under Chapter 21

The Texas Supreme Court has consistently held that because one purpose of Chapter 21 is to execute of the policies of Title VII and the Americans with Disabilities Act, courts should look to the analogous federal statutes and cases in analyzing race and disability discrimination claims

under Chapter 21.  *See City of Houston v. Proler*, 437 S.W.3d 529, 532 & n.7 (Tex. 2014) (ADA);

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) (Title VII).

Employment discrimination in violation of Title VII can be proven by either direct or circumstantial evidence.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is direct if it would prove the fact in question without inference or presumption.  *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted).  If no direct evidence exists, the court uses the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to determine whether summary judgment is appropriate.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).  The legal standard is well settled:

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination.  If the plaintiff presents a *prima facie* case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted).

The elements of a *prima facie* showing of discrimination are that the plaintiff: (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, was treated more harshly than others who were similarly situated.  *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

The defendant's burden of articulating a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (5th Cir. 1993). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (internal citations and quotation marks omitted). The defendant must produce "admissible evidence, . . . which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507.

If the employer meets its burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to raise a fact dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)); *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("On summary judgment . . . the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford*, 190 F.3d at 404.

When evaluating pretext, the focus is on the employer's motivation for the adverse employment action, not whether the employer acted wisely or based its decision on an accurate understanding of the facts. Title VII does not require objectively fair-minded or well-reasoned business decisions. It does require that employers refrain from making business decisions on a

prohibited basis, including race discrimination or retaliation for protected conduct. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). It is not enough for a plaintiff to show a material factual dispute as to whether the company's decision to take an adverse employment action against her was good business, or to show that the employer was wrong about the underlying facts. The question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true and warranted the action. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

### III.   Analysis

#### A.   The Chapter 21 Claims

##### 1.   Race Discrimination

Ms. Harper and the School District agree that the *McDonnell-Douglas* framework applies. For the purposes of the summary judgment motion, the School District concedes that the first three elements are satisfied. Only the fourth element is disputed. The parties dispute both what that element is and whether it is satisfied.

The School District characterizes the claim as a "race replacement case," which requires Harper to show that she was replaced by someone not in the protected class. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). There is no dispute that an African-American woman was hired into the coordinator position that Ms. Harper declined. If this is a race-replacement case, Ms. Harper cannot make out a *prima facie* case showing race discrimination.

Ms. Harper argues that this is not a replacement case. Instead, she characterizes her claim as a "reduction in force." In a "reduction in force" case, the fourth element of the *McDonnell-Douglas* framework is modified to require a plaintiff to offer "evidence, circumstantial or direct,

from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Bird v. Simpson Inv.*, 121 F.3d 705 (5th Cir. 1997). Framed another way, it requires evidence that would allow a jury to conclude that the employer did not treat Ms. Harper's race as a neutral factor in deciding whether to retain or terminate her. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995).

In *Bird,* the Fifth Circuit explained that the typical *prima facie* case requirements must be modified in the reduction-in-force context because "reduction-case plaintiffs are simply laid off and thus [are] incapable of proving . . . actual replacement by [an] employee" outside the protected class. *Id.* at 4. The employer in *Bird* had implemented two reorganizations that reduced the work force. *Id.* at 1–3. The plaintiff refused the voluntary severance-package offers and was told that once the severance period had closed, the work force would be restructured and the employees could apply for jobs. *Id.* at 1. Those who did not obtain a job would be terminated. *Id.* The plaintiff applied for a job "nearly identical" to the job he held before the reduction-in-force. *Id.* at 2. A younger employee was hired, and the plaintiff sued for age discrimination. *Id.* at 2–3. The Fifth Circuit found that the claim was more analogous to a discriminatory failure-to-hire or a failure-to-promote claim than a reduction-in-force claim, because the crux of the plaintiff's allegations was that the job was awarded to another employee because of the plaintiff's age or disability. *Id.* at 4.

The facts here are not typical of a reduction-in-force case. As in *Meinecke v. H & R Block of Houston*, 66 F.3d 77 (5th Cir. 1995), the threshold issue is whether the facts make a reduction-in-force or a replacement analysis appropriate. The plaintiff in *Meinecke* argued that her claim should be analyzed under a replacement framework because another individual took over her duties when she left, her retirement was not announced as part of a reduction-in-force, and the offices she had

overseen continued operating. *Id.* at 83. The employer argued, and the court agreed, that the case should be analyzed in the reduction-in-force context. *Id.* at 84. The employer closed the Houston headquarters where the plaintiff had worked, abolished her position as part of the reorganization plan, and other parts of the company took over the headquarter's functions. *Id.* at 84.

Ms. Harper contends the facts of this case resemble *Meinecke*. She argues that because her assistant director position was eliminated and she never held the coordinator position, Ms. Brigham, who was hired into the coordinator position Ms. Harper did not accept, could not have "replaced" her. The School District contends that although the titles and salaries differed, the positions were similar and fit the "replacement" framework. The School District also notes that Ms. Harper's At-Risk Department remained operational, and that her assistant director duties stayed in that department. (Docket Entry No. 18, Ex. B at ¶¶ 9–11; Ex. D-5). The School District argues that this is a replacement, not a reduction-in-force case.

Ms. Harper's argument is unpersuasive under either the replacement or reduction-in-force framework. She argues that the School District discriminated against her by failing to transfer her to another position when hers was eliminated, and she did not accept the coordinator position offered to her. In *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144 (5th Cir. 1995), the plaintiff made a similar argument. In that reduction-in-force case, the plaintiff argued that his employer considered his age, in addition to economic factors, when it neither relocated nor rehired him for positions that became open in other territories. *Id.* at 150. The plaintiff did not present or identify evidence that there were openings when he was terminated. *Id.* The employer testified there were no openings and that no other similarly situated employees when the office closed. *Id.* Nor did the plaintiff present or identify evidence that the employer had ever transferred a field-sales representative, the

position the plaintiff had held. *Id.* The Fifth Circuit found that this evidence failed to support an inference of discriminatory intent. *Id.*

Ms. Harper's argument is similar. She declined the coordinator position when it was offered to her and she was told that her assistant director position would be eliminated. The only evidence of discriminatory intent is that she was not transferred to another position. Ms. Harper points to her own deposition and affidavit as evidence of discrimination. In her affidavit, she states: "Because I had seen other employees who were transferred into positions as a result of reorganization, I thought that based on my 22 years of experience, I too would be given the opportunity to transfer into another position." (Docket Entry No. 19, Ex. A at ¶ 23). In her deposition, Ms. Harper made a similar comment: "It was my understanding that I would have been offered another position like they've done with so many other employees." (*Id.*, Ex. B at 43). But Ms. Harper *was* offered another job. She turned it down. The record does not show that she applied for any other position or presented evidence that any other position was available. Her complaint of discrimination solely rests on a "belief" that she should have been reassigned. *Vasquez v. Nueces Cty., Tex.*, 551 F. App'x 91, 94 (5th Cir. 2013) ("[W]e have held that the subjective belief of a plaintiff is not sufficient to establish a *prima facie* case of discrimination under Title VII, the ADEA, or the TCHRA.") (citing *Baltazor v. Holmes*, 162 F.3d 368, 377 n.11 (5th Cir. 1998)).

Ms. Harper also points to four white assistant directors who she alleges were treated more favorably. The alleged comparators are described below.

1. Sherrod Bigner. He was promoted from Coordinator–Accountability to Assistant Director–Accountability, under Dr. Megan Evans's supervision. Dr. Evans was the Director of Innovation and Continuous Improvement. (Docket Entry No. 18, Ex. E at ¶ 4; Ex. E-1).

2. Amanda Hartley. She was employed as a Coordinator–Title I during the 2014–2015 school year and was promoted to Assistant Director–Special Programs Title I under the supervision of Irma Cobos, the Director of Special Programs. (*Id.*, Ex. E at ¶ 5; Ex. E-2).

3. Michelle LeBleu. She was employed as Coordinator–Special Education until she was promoted to Assistant Director–Special Education under the supervision of Dawn Carlson, the Director of Special Education. (*Id.*, Ex. E at ¶ 6; Ex. E-3).

4. Nicole Roberts. She was employed as Coordinator–Special Education until she was promoted to Assistant Director of Compliance. She, like Ms. LeBleu, was under Ms. Carlson's supervision. (*Id.*, Ex. E at ¶ 7; Ex. E-4).

Ms. Harper asserts that these comparators were promoted during the same period that she was "demoted" to coordinator. She argues that she was more qualified than one of her comparators, Ms. Hartley. Ms. Harper also notes that while Ms. Roberts, Ms. LeBleu, and Ms. Hartley had different direct supervisors, all three were under the umbrella of Dr. Garcia's oversight. Fort Bend distinguishes Ms. Harper's proposed comparators. None of the comparators worked in Ms. Harper's department. (*Id.*, Ex. E at ¶¶ 4–7). None reported to Mr. Ewing, Ms. Harper's direct supervisor. (*Id.*). Ms. Harper did not know what job duties Ms. Bigner, Ms. Roberts, or Ms. LeBleu had in their roles. (*Id.*, Ex. A at 63, 71). Ms. Harper believed that she and Ms. Hartley had similar duties, but that Ms. Harper had "more duties." (*Id.* at 68).

The only evidence in the summary judgment record that Ms. Roberts, Ms. LeBleu, and Ms. Hartley were similar to Ms. Harper is that Dr. Garcia was in their chain of command.[3] Ms. Harper argues this is enough. She quotes *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260–61 (5th Cir. 2009): "[I]t is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." The context

---

[3] Dr. Garcia did not Mr. Bigner. (Docket Entry No. 18, Ex. E-1). Nor was Dr. Garcia involved in the decision to promote Mr. Bigner. (*Id.*). For Mr. Bigner, Ms. Harper has not presented or pointed to any evidence that they are similar.

in which the Fifth Circuit made this statement is key.  In *Lee*, the plaintiff and his comparator were both train engineers who had "committed a like number of moving violations."  *Id.* at 261.  The court reasoned that "[the two employees] are similarly situated . . . .They held identical positions [ ], compiled a similar number of serious moving violations over a similar period of time . . . , and their ultimate employment status rested with the same person."  *Id.* at 261–62.  Citing *Lee*, another court found that a coworker was not sufficiently similar to the plaintiff to be a comparator, even though both were department heads and both departments were abolished by the same decisionmaker (the Commissioners Court) due to a reduction in force.  *Heggemeier v. Caldwell Cty. Comm'rs Court*,, 2015 WL 1737861, at *7 (W.D. Tex. Apr. 15, 2015), *subsequently aff'd sub nom. Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861 (5th Cir. 2016).  The court noted that the proffered comparator worked in a different department, had been employed for 20 years, and had his position eliminated for a different reason.  *Id.* at *6–*7.  The record showed that the plaintiff and the proffered comparator had different employment histories and failed to show that they had the same jobs or responsibilities.  *Id.*

The comparators Ms. Harper proffers do not fit the arguments she presents.  Ms. Harper argues that she should have been transferred or reassigned, not terminated, once she turned down the coordinator position.  The four individuals were promoted to assistant director positions and were not part of the reorganization.  None of the comparators was subject to a reorganization and then transferred into a position without applying for it.  Ms. Hartley, for example, was reclassified to an assistant director position after an analysis showed that her current job duties "align[ed] with those of an Assistant Director."  (Docket Entry No. 18, Ex. E-2).  Ms. Harper does not present or

point to any evidence that explains the circumstances surrounding Mr. Bigner's, Ms. LeBleu's, or Ms. Robert's promotion from coordinator to assistant director. (*See* Docket Entry No. 19 at 14).

The better fit to Ms. Harper's arguments is the second, unnamed group of comparators strewn throughout her briefs. These unidentified individuals were "transferred into positions as a result of reorganization," leading Ms. Harper to think "that based on [her] 22 years of experience, [she] too would be given the opportunity to transfer into another position." (Docket Entry No. 19, Ex. A at ¶ 23; Ex. B at 43). The evidence of these anonymous individuals cannot support an inference that they were similarly situated to Ms. Harper.

Ms. Harper's argument boils down to the contention that she should have been transferred to a position equivalent to that of an assistant director, without applying, and without any evidence that the position was available. In the February 27, 2015 letter, extending a formal written offer of the coordinator position, Dr. Garcia also told Ms. Harper that "[a]s an employee of [the School District] in good standing you are eligible to apply for any other positions that we may have available." (Docket Entry No. 18, Ex. B-4). This offer was reiterated in Ms. Harper's termination letter on June 9, 2015. (*Id.*, Ex. A-3). Ms. Harper was offered a coordinator position, which she turned down. There is no evidence in the record that she applied for any position. Ms. Harper's argument resembles a failure-to-promote claim that cannot proceed because she never applied for an available position. *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004).

Ms. Harper has not made a *prima facie* case showing race discrimination. While this suffices to grant summary judgment against her, for thoroughness, the court assumes a *prima facie* case and analyzes the School District's proffered nondiscriminatory reason for terminating Ms. Harper and her arguments on pretext.

The School District presents evidence that it eliminated Ms. Harper's position as part of a two-phase reorganization in the Federal and Special Programs Department implemented to "promote efficiency in the programs provided to FBISD's students by that Department, including At-Risk services." (Docket Entry No. 18 at 24; *id.*, Ex. B at ¶¶ 4–9; *id.*, Ex. C at ¶¶ 5–9). A reorganization is routinely held to be a nondiscriminatory reason for termination. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007) (department reorganization, eliminating plaintiff's position was a legitimate, nondiscriminatory reason for termination).

Ms. Harper argues that inconsistencies in the School District's proffered explanation show pretext. Ms. Harper notes that she was told her pay would be reduced to $86,000 ($11,000 less than she made as an Assistant Director), but the pay scale indicated that she could have made as much as $99,930.00. But Ms. Harper does not allege discriminatory pay. The evidence also shows that the pay scale for the coordinator position was as low as $66,000; Ms. Harper was offered the high end of the pay scale for the coordinator position.

Ms. Harper also points to errors in the School District's submissions after Ms. Harper challenged its decisions. Bruce Drennan, a Human Resources Specialist, sent the pay scale for the coordinator position to the Texas Workforce Commission after Ms. Harper filed her discrimination charge. In that letter, he stated that "[b]ecause [Harper] never accepted the position, salary was never discussed with her." (Docket Entry No. 19, Ex. E). In his sworn testimony before the Texas Workforce Commission, he corrected this misstatement and explained that he was wrong in asserting that salary had not been discussed with Ms. Harper. He corrected the letter by testifying that salary was discussed with her in the meeting with Mr. Spears. (*See* Docket Entry No. 20, Ex. A). Ms. Harper also points to an affidavit from Mr. Spears that noted salary had been discussed. (Docket

Entry No. 18, Ex. D at ¶ 4). In the affidavit, Mr. Spears stated that he met with Harper on May 4th. (*Id.*). It is undisputed that the meeting was on March 4. (*See* Docket Entry No. 19, Ex. N) (email from Mr. Spears to Ms. Harper: "Just following up on our conversation this morning regarding the Coordinator, At-Risk Programs [] position . . . ."). None of these errors is material and each was corrected and clear in the record.

Finally, Ms. Harper points to Mr. Spears's affidavit, in which he stated that during Mr. Ewing's January 27, 2015 mid-year review of Ms. Harper's work, Mr. Ewing was not "in the know" about the reorganization and "did not know what was going on organizationally." (Docket Entry No. 19, Ex. A at ¶ 21). Ms. Harper contends that these statements are inconsistent with the School District's assertions that Mr. Ewing consulted with Dr. Garcia on the reorganization and support finding pretext. They do not. Dr. Garcia's and Mr. Ewing's affidavits state that Mr. Ewing was consulted on the reorganization, and that Dr. Garcia recommended eliminating the assistant director position and creating a coordinator position to the Executive Leadership Team for approval. (Docket Entry No. 18, Ex. B at ¶¶ 7–11; *id.*, Ex. C at ¶¶ 7–10). This is not inconsistent with Mr. Spears's affidavit. The record evidence shows that Mr. Ewing was consulted before the December 2014 proposal to the Executive Leadership Team, and that only Dr. Garcia presented the proposal to the Executive Leadership Team for approval. There is no evidence in the summary judgment record indicating that Mr. Ewing knew what the result of that consultation was before he met with Ms. Harper and Dr. Garcia in February 2015 to discuss the reorganization.

The corrected errors and asserted inconsistency do not show that the School District's proffered explanation was a pretext for race or disability discrimination. *See Alfred v. Louisiana Dep't of Corr.*, 619 F. App'x 324, 328 (5th Cir. 2015) ("The questions raised by those

inconsistencies are insufficient to preclude summary judgment because they do not create a genuine dispute about a *material* fact."). In *Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 F. App'x 425, 430 (5th Cir. 2016), the Fifth Circuit affirmed the district court's grant of summary judgment to the employer. The plaintiff argued that the employer's proffered explanations to the district court were pretextual because the employer had offered inconsistent justifications for the plaintiff's termination in the E.E.O.C. and the district court. *Id.* at 430–31. The appellate court disagreed, but explained that even if the submissions were inconsistent, "in those cases in which we have focused on inconsistent rationales, there has been otherwise strong evidence of pretext." *Id.* Ms. Harper presented neither significant inconsistencies nor other evidence—much less "strong" evidence—of pretext.

Even if Ms. Harper had shown a *prima facie* case of race discrimination, she has not raised a factual dispute as to whether the School District proffered explanation was pretextual. The School District's summary judgment motion on Ms. Harper's Chapter 21 race-discrimination claim is granted.

### 2. Disability Discrimination

Courts also use the burden-shifting framework to analyze disability discrimination claims under Chapter 21 based on circumstantial evidence. *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 320 (5th Cir. 2016). To make a *prima facie* showing of disability discrimination under the ADA and therefore Chapter 21, Ms. Harper must make a showing that: (1) she had a disability; (2) she was qualified for the job; and (3) "she was subject to an adverse employment decision on account of her disability." *See id.* (citing *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). The School

District does not dispute that Ms. Harper was qualified. It does dispute the second and third elements.

Ms. Harper contends that she was disabled by the bunion on her foot that required surgery. To determine whether an impairment is substantially limiting, Texas courts "consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *El Paso County v. Vasquez*, 2016 WL 2620115, at *10 (Tex. App.—El Paso May 5, 2016, pet. denied).

During her deposition, Ms. Harper testified that she was disabled beginning the day of her surgery, March 5, 2015, and that her disability ended when she returned to work, June 9, 2015. (Docket Entry No. 18, Ex. A at 58–61). Her E.E.O.C. intake questionnaire provides a similar timeline. Ms. Harper filled out the form on June 12, 2015 and checked the box marked "I do not have a disability now but I did have one." (*Id.*, Ex. A-2). When asked about the form and when she was disabled, she responded, "[d]uring the time that I was on FMLA leave and immediately following returning back to work." (*Id.*, Ex. A at 61).

Ms. Harper's own testimony and the E.E.O.C. intake form she completed show that she was not disabled when the School District made and approved the reorganization decision in December 2014. She contends that the termination decision did not occur until she returned from her FMLA leave on June 9, 2015, shortly before her disability ended. Her only evidence in support of this argument is that she was not told that she would be terminated if she did not accept the coordinator position. (*See* Docket Entry No. 19 at 20) ("In essence, Plaintiff felt that her termination was due

in part to having previously notified Mr. Ewing, in January of 2015, that she would" have surgery in March 2015).

The undisputed record evidence shows that the reorganization decision occurred in December 2014, before anyone at the School District knew of Ms. Harper's need for foot surgery and disability during the recovery. (Docket Entry No. 18, Ex. B at ¶ 7; *id.*, Ex. C at ¶ 7). During the February 2015 meeting with Dr. Garcia and Mr. Ewing, Ms. Harper was informed that her assistant director position would be eliminated at the end of the fiscal year, June 30, 2015. (*Id.*, Ex. B at ¶¶ 8–9). At the same meeting, Ms. Harper was offered the coordinator role, which she did not accept. The letter offering Ms. Harper the coordinator position and recapping the meeting stated that, "[a]s an employee of [the School District] in good standing [Ms. Harper was] eligible to apply for any other positions that we may have available." (*Id.*, Ex. B-4). The record evidence does not show that Ms. Harper applied for another position. When Ms. Harper returned to work on June 9, 2015, she was given a termination letter that explained that her assistant director position would be eliminated on June 30, 2015, and that because she had not accepted the coordinator position, she would be terminated on that date. (*Id.*, Ex. A-3). These events leading to Ms. Harper's termination from December 2014 to June 2015 cannot be sliced and diced as Ms. Harper argues. Ms. Harper's position was eliminated on December 10, 2014, when Dr. Garcia and Mr. Ewing met, Dr. Garcia made the proposal to the Executive Leadership Team, and it was accepted. All that happened on June 30, 2015 was the final implementation step following Ms. Harper's failure to take the coordinator position or apply for any other position.

The undisputed evidence of the chronology of events ends Ms. Harper's claims. *Vasquez*, 2016 WL 2620115, at *10 ("[U]nder the actual disability prong, the relevant determination is

whether the plaintiff was disabled at the time of the adverse employment action.") (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009) ("[T]he relevant time for assessing the existence of a disability is the time of the adverse employment action.")).  Ms. Harper's only response to this evidence is hand-waving:  "As is clear from Plaintiff's June 22, 2015, E.E.O.C. Charge, she felt that she had suffered from disability discrimination . . . and specifically described her discussion with Mr. Ewing wherein she discussed her medical condition and the possible need for upcoming surgery."  (Docket Entry No. 19 at 20).  The uncontroverted record evidence shows that Ms. Harper, by her own account, was not disabled when the adverse employment action—the decision—was made in December 2014.

Additionally, Ms. Harper's three-month recovery period is likely too short to be considered substantially limiting to establish a qualifying disability.  A temporary, nonchronic impairment of short duration, with little or no longer-term or permanent impact, is usually not a disability under the statutes.  *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).  Examples of temporary, nondisabling impairments include "broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. § 1630 app., § 1630.2(j).  A temporary impairment may be covered only if it is sufficiently severe as to substantially limit a major life activity, beyond the short-term effects. *Clark v. Boyd Tunica, Inc.*, 2016 WL 853529, at *4 (N.D. Miss. Mar. 1, 2016), *aff'd*, 665 F. App'x 367 (5th Cir. 2016) (citing *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014)).

Ms. Harper also argues for the first time that she was "regarded as" disabled.  Even if the court were to consider this argument, Ms. Harper neither presents nor identifies evidence supporting an inference that the School District regarded her as disabled.  To the contrary, she was expected to return to work in her usual office working full time, with no restrictions or limitations.

Ms. Harper cannot show that she suffered an adverse employment action "on account of" a disability. Ms. Harper did not tell Mr. Ewing about her surgery until January 2015. Ms. Harper does not argue or present evidence showing that Mr. Ewing or others at the School District knew about the purported disability before January 2015. Because Ms. Harper did not notify her employer of her foot surgery and need for FMLA leave until after the decision to eliminate her position in the At-Risk Department restructuring, she cannot show causation and cannot survive summary judgment. *Dallas County Sch. v. Green*, 05-14-00432-CV, 2016 WL 229434, at *8 (Tex. App.—Dallas Jan. 19, 2016), *reh'g overruled* (Feb. 10, 2016) (overturning a jury verdict finding disability discrimination because there was no evidence of a relationship between the plaintiff's alleged disability and the adverse employment action).

Ms. Harper has not provided or pointed to evidence raising a factual dispute as to whether she was disabled, regarded as disabled, or terminated "on account of" a disability. The School District's summary judgment motion on Ms. Harper's disability-discrimination claim is granted.

## B.     FMLA Claims

The FMLA allows qualified employees working for covered employers to take up to 12 weeks of unpaid leave during any 12-month period for an employee's serious health condition. *See* 29 U.S.C. § 2612(a); *Willis v. Coca Cola Enter., Inc.*, 445 F.3d 413, 417 (5th Cir. 2006). The FMLA prohibits interference with leave and retaliation for taking leave. *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013). Ms. Harper asserted both interference and retaliation claims.

1.     **Interference**[4]

An employer may not interfere with, restrain, or deny FMLA rights. *See* 29 U.S.C. § 2615(a)(1); *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). To succeed on her interference claim, Ms. Harper must at least show that the School District "interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 347 (5th Cir. 2013); *see also Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam) (a *prima facie* interference claim requires showing that the employer "denied [plaintiff] the benefits to which she was entitled under the FMLA") (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)). Job restoration when qualified leave ends is a substantive FMLA right for purposes of an interference claim. *See Shirley*, 726 F.3d at 681.

Ms. Harper alleged that the School District interfered with her FMLA rights by refusing to reinstate her to a similar position when Ms. Harper returned to work in June. The record undermines her claim. She was reinstated to her assistant director position until the end of the fiscal year, when the position was terminated. *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (an employee could not support an interference claim after she took all the leave to which she was entitled and was reinstated to her previous position). This claim has no merit.

Ms. Harper also alleged that the School District interfered with her FMLA rights by terminating her shortly after she returned from FMLA leave. The decision to eliminate Mr. Harper's

_____

[4] The School District moved for summary judgment on Ms. Harper's interference claim under the FMLA, but Ms. Harper did not respond to this argument in her initial response or surreply. (*See* Docket Entry Nos. 19, 24). Although her failure to pursue her claim beyond her complaint likely abandons the claim, in the interest of thoroughness, the court discusses the merits of the School District's summary judgment argument. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

position was made in December 2014, before Ms. Harper notified Mr. Ewing that she needed surgery and FMLA leave. In June 2015, the School District followed through on the plan it had approved and announced to Ms. Harper much earlier. Ms. Harper is "not entitled to 'any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Shirley* , 726 F.3d at 681–82 (quoting 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a)). "An employee has no right to reinstatement if the employee's prior position has been eliminated." *Forbes v. Unit Tex. Drilling, L.L.C.*, 526 F. App'x 376, 380 (5th Cir. 2013) (citing 29 C.F.R. § 825.216(a)(2)); *see also Roberson v. Game Stop/Babbages,* 152 F. App'x 356, 362 (5th Cir. 2005) ("[The plaintiff] is not entitled to keep a job that no longer exists.").

The School District's summary judgment motion on Ms. Harper's FMLA interference claim is granted.

### 2.    Retaliation

The FMLA also "protects employees from retaliation or discrimination for exercising their rights under the FMLA." *See Mauder v. Metro. Transit. Auth. of Harris Cty.*, 446 F.3d 574, 580 (5th Cir. 2006). The elements of a *prima facie* showing of retaliation are that: (1) the plaintiff was protected under the FMLA; (2) the plaintiff suffered an adverse employment decision; and (3) that the plaintiff was treated less favorably than an employee who had not requested FMLA leave or the adverse employment decision was made because she took FMLA leave. *Id.* at 583. The School District concedes that the first two elements are met; the third is disputed. But the record is clear. Ms. Harper's FMLA retaliation claim fails for the same reason her race and disability discrimination claims fail. The decision to eliminate Ms. Harper's assistant director position was made in

December 2014, before Ms. Harper notified the School District in January 2015 that she would take FMLA leave. The record fails to support an inference that Ms. Harper's job termination was because she sought FMLA protection, or that she was treated less favorably than an employee who had not taken FMLA leave.

The School District's summary judgment motion on Ms. Harper's FMLA retaliation claim is granted.

## IV. Conclusion

Fort Bend Independent School District's summary judgment motion is granted as to all Ms. Harper's claims. (Docket Entry No. 18). Final judgment is entered by separate order.

SIGNED on May 9, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge